Herbert **EHINGER**, Petitioner,

v.

David **MILLER**, Superintendent of Eastern Correctional Facility, Respondent.

No. 95 CIV. 9982 (MBM).

United States District Court, S.D. New York.

Oct. 9, 1996.

Herbert Ehinger, Napanoch, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York (Dian Kerr McCullough, Assistant Attorney General, of counsel), New York City, for Respondent.

## ORDER AND OPINION

MUKASEY, District Judge.

Herbert Ehinger petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state court conviction of kidnapping in the first degree. After withdrawing several unexhausted claims, petitioner asserts two grounds for relief, both based on ineffective assistance of appellate counsel for neglecting to raise on appeal alleged deficiencies in trial counsel's performance. Those deficiencies are: (1) failing to challenge the alleged constitutional vagueness of the term "abduct" as defined in New York's kidnapping statute, New York Penal Law § 135.25; and (2) failing to argue that a kidnapping victim's apartment cannot, as a matter of law, be considered "a place not likely to be found" as required by New York's kidnap-

ping statute. (Petition ¶¶ 12) This case was referred to Magistrate Judge Andrew J. Peck who, after careful consideration and analysis of the record, issued a Report and Recommendation (the "Report") on July 3, 1996 recommending dismissal of the petition. For the reasons set forth below and in the Report, the writ is denied, and the petition is dismissed.

## I.

The relevant facts and testimony, as set forth in the Report, are as follows: In June 1987, the victim in this case, Hirokai Murai, was beaten and subdued by his roommates Herbert Ehinger and Suzanne Marel after a quarrel over a bounced rent check. Murai was bound and gagged and over the next five days was held hostage in his own apartment.

During the five days, Murai was repeatedly kicked and beaten. Ehinger and Marel tortured Murai until he gave them the personal access code to his bank account and signed withdrawal slips from his money market account. While holding Murai captive, Ehinger and Marel proceeded to empty the victim's bank accounts and remove certain of his personal possessions from the apartment.

On the fifth day of captivity, Murai was able to escape while Ehinger and Marel were sleeping. Murai summoned the police who arrested both Ehinger and Marel and recovered over $4000 of the victim's money and several of his personal items from a hotel room the two had rented.

Ehinger was tried in the Supreme Court, New York County on a charge of kidnapping in the first degree. The trial court instructed the jury as to the nine elements involved in kidnapping, all of which were taken verbatim from the state's approved jury instructions. See N.Y.Crim. Jury Instructions, PL § 135.25(1). The charge stated in part that, "[t]he crime of kidnapping among other things requires proof of abduction" and that "[a]ccording to the law a person abducts another person when he restrains a person with intent to prevent his liberation by either secreting or holding him in a place where he is not likely to be found or using or threatening to use deadly physical force." The charge also instructed the jury that the re-

straint used must constitute abduction: "That is to say that a Defendant so restrained Mr. Murai with intent to prevent his liberation by secreting or holding him in a place where he was not likely to be found." Neither, Ehinger's nor Marel's counsel objected to the kidnapping charge.

The jury convicted Ehinger of kidnapping in the first degree, robbery in the first and second degrees, and grand larceny in the third degree. Ehinger was sentenced to 20 years to life on the kidnapping count, and lesser concurrent sentences on the other counts. *See People v. Ehinger*, 152 A.D.2d 97, 101, 547 N.Y.S.2d 302, 305 (1st Dep't 1989).

## II.

Ehinger appealed his conviction to the Appellate Division, First Department, claiming, *inter alia* that the term "abduct" in the New York kidnapping statute is unconstitutionally vague. (McCullough Aff., Ex. A; Ehinger's App.Div.Brief at 1) By Opinion and Order dated November 21, 1989, the Appellate Division unanimously affirmed Ehinger's conviction. *People v. Ehinger*, 152 A.D.2d 97, 547 N.Y.S.2d 302 (1st Dep't 1989). On January 24, 1990, the Court of Appeals denied leave to appeal. *People v. Ehinger*, 75 N.Y.2d 812, 552 N.Y.S. 2d 562, 551 N.E.2d 1240 (1990).

Ehinger then moved, pursuant to NYCPLR § 440.10, to set aside his conviction on the ground that material evidence presented by the state at trial was untrue and that the prosecution knew it to be false. (McCullough Aff. ¶ 3) The Supreme Court, New York County, denied the motion on December 6, 1990, and the Appellate Division denied leave to appeal on June 11, 1991. (*Id.*)

On May 17, 1995, Ehinger filed a motion for a writ of error coram nobis to the Appellate Division, First Department, claiming that he was denied effective assistance of appellate counsel. (McCullough Aff. ¶ 8 & Exs. F–G) Ehinger claimed that appellate counsel was ineffective for neglecting to include, in his direct appeal, a claim of ineffective assistance of trial counsel. On August 31, 1995, the First Department denied the motion. (McCullough Aff. ¶ 8 & Ex. H)

On October 12, 1995, Ehinger filed this petition pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus, alleging he was denied his right to effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the Constitution.

The petition was referred to Magistrate Judge Peck pursuant to Fed.R.Civ.P. 72(b). On July 3, 1996, Magistrate Judge Peck issued his characteristically thorough Report analyzing petitioner's claims for relief. He found no constitutional violation that might warrant post-trial relief. On July 15, 1996, petitioner submitted his two nearly identical objections to the Report. First, petitioner argues that Magistrate Judge Peck used the Appellate Division's reasoning to determine that the statute was not unconstitutionally vague. This, petitioner concludes, is the wrong test to determine whether the statute is void for vagueness, and therefore the wrong test to determine whether counsel was ineffective. Similarly, petitioner objects to the Magistrate Judge's use of the same reasoning as the Appellate Division to determine that the phrase "a place not likely to be found," as used in the New York kidnapping statute, presents a comprehensible fact issue for determination by a jury.[1]

## III.

Under Fed.R.Civ.P. 72(b) a district judge may adopt those parts of a magistrate judge's report to which no specific objection is made, provided they are not clearly erroneous. *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 471–72, 88 L.Ed.2d 435 (1985).

---

1. Petitioner's second objection argues that the jury at petitioner's trial could not have understood the New York kidnapping statute because it was unconstitutionally vague. Although petitioner's second objection, as drafted, reads as a reiteration of petitioner's previous void-for-vagueness argument, petitioner does suggest that the basis for this objection is his belief that a kidnapping victim's apartment cannot be considered "a place unlikely to be found". Therefore, I read petitioner's second objection as did the Appellate Division and the Magistrate Judge, to arise from a claim that the jury could not, as a matter of law, find that the victim was "abducted" in his own home.

The court is required to make a *de novo* determination regarding those parts of the report to which any party objects, but a *de novo* hearing is not required. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980)

■ Petitioner objects first to the factors used by the Magistrate Judge to determine that Ehinger was not prejudiced by his counsel's failure to argue that the New York kidnapping statute is unconstitutionally vague. Petitioner argues that this court must make a separate finding as to whether the statute is void for unconstitutional vagueness and not rely on the reasoning of the Appellate Division. However, the void-for-vagueness issue is not directly before this court. Rather, the question raised by this petition is whether Ehinger's appellate counsel was ineffective for not raising, as an issue on appeal, trial counsel's ineffectiveness in not arguing that the New York kidnapping statute is unconstitutionally vague.

To prevail on his claim of ineffective assistance of counsel, petitioner must establish that his lawyer's conduct fell below "an objective standard of reasonableness" defined by "prevailing professional norms". *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1994). Additionally, petitioner must "affirmatively prove prejudice." *Id.* This creates a two-prong test requiring petitioner to show that: appellate counsel made unreasonable errors, and "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The *Strickland* test applies to both trial and appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). The Supreme Court has also held that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70.

On appeal, the Appellate Division held that although the issue of whether the New York kidnapping statute was unconstitutionally vague was not preserved for appellate re-

view, "[t]he statutory reference here to a place where a victim is not likely to be found passes constitutional muster...." *People v. Ehinger,* 152 A.D.2d 97, 100, 547 N.Y.S.2d 302, 304 (1st Dep't 1989). Thus, the Appellate Division addressed the merits of petitioner's claim. Had petitioner's appellate counsel argued that trial counsel was ineffective for failing to raise this issue, petitioner still would have lost; the appellate court found that the statute is not unconstitutionally vague. Petitioner's appellate counsel cannot be considered ineffective because petitioner could not have been prejudiced by that counsel's failure to contend that trial counsel was ineffective for failing to make a losing argument—that the statute was unconstitutionally vague—an argument considered in any event as if it had been raised. Therefore, his objection to the Report is without merit.

■ Petitioner's second objection to the Report fails for similar reasons. Again, although the Appellate Division held that the issue as to the clarity of the statute for determining a "place not likely to be found" was not saved for appeal, the court stated that even "in the interest of justice we would find it unpersuasive." *Id.* The Appellate Division reached this result because "the degree of likelihood or unlikelihood of discovery of the victim's hiding place simply presented a factual question for the jury to resolve" and that it was "not susceptible to disposition as a matter of law on the record." *Id.,* 152 A.D.2d at 100–101, 547 N.Y.S.2d at 304–305. Once again, petitioner was not prejudiced by his appellate counsel's decision not to raise trial counsel's failure to argue a losing issue. This objection to the Report is also without merit.

\* \* \* \* \* \*

For the reasons stated above, the writ is denied and the petition dismissed.

SO ORDERED:

*REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

TO THE HONORABLE MICHAEL B. MU-KASEY, United States District Judge:

By Report and Recommendation dated April 18, 1996, I recommended that the Court deny Herbert Ehinger's petition for a writ of habeas corpus because it was a "mixed" petition containing both exhausted and unexhausted claims. On April 24, 1996, Ehinger filed a document styled "Objections to Magistrate's Report and Recommendation" that contained no objection but rather withdrew his unexhausted claims. By Order dated May 22, 1996, Judge Mukasey affirmed and adopted my Report and Recommendation and re-referred the case to me to consider the exhausted claims on the merits.

This Report and Recommendation, therefore, considers the merits of Ehinger's exhausted habeas claims that his appellate counsel was ineffective for failing to (1) raise trial counsel's ineffectiveness in failing to challenge the alleged constitutional vagueness of the term "abduct" in New York's kidnapping statute, and (2) argue that Ehinger was convicted on a standard of proof less than guilt beyond a reasonable doubt. (*See* Petition ¶¶ 12.) For the reasons set forth below, I recommend that Ehinger's petition for a writ of habeas corpus be denied.

### FACTS

#### *The Victim, Murai's, Testimony at Trial*

In June 1987, the victim in the case, Hirokai Murai, placed an ad for a roommate in the "Village Voice" newspaper. (Trial Transcript ["Tr."] at 188.) Shortly thereafter, Ehinger and his girlfriend Suzanne Marel moved in with Murai; they slept in the living room, while Murai slept in the bedroom. (*Id.*) Murai confronted Ehinger when Ehinger's July rent check bounced. (Tr. 189–90, 193–95.) Ehinger punched Murai in the head so sharply that Murai started to bleed. (Tr. 196.) Because of the blood on the floor, Murai slipped and fell, and Ehinger put Murai in a headlock and subdued him. (Tr. 196–97.) Ehinger called Marel into the room, and she tied Murai's legs with electrical cord and handcuffed Murai's hands behind his back. (Tr. 200–01.)

Ehinger and Marel repeatedly kicked and beat Murai and demanded money. (Tr. 204–07.) Ehinger and Marel took Murai's Citibank bankcard from his wallet and demanded to know Murai's personal bankcard code. (Tr. 207.) Murai gave Ehinger a false code three times; each time Ehinger returned from the bank, Murai was threatened and beaten. (Tr. 207.) Ehinger and Marel "tortured" Murai to get the real code number. (Tr. 207–09.) Ehinger threatened to puncture Murai's eardrum with a match stick. (Tr. 208.) Ehinger and Marel threatened Murai with a knife, first by holding it against Murai's neck, then Ehinger attempted to thrust the knife into Murai's rectum. (Tr. 207, 210.) They also burned his hair. (Tr. 211.) Murai finally yielded to the torture and gave them the correct bankcard code. (Tr. 207–08, 210–11.) Murai only had two hundred dollars in his checking account (Tr. 190), and Ehinger made him sign a withdrawal slip so that Ehinger could withdraw money from Murai's money market account. (Tr. 232.) From July 17 to July 22, 1987, several thousand dollars were withdrawn from Murai's bank accounts with the bankcard. (Tr. 386–88.)

For the next five days, Ehinger and Marel kept Murai tied up in his bedroom. (Tr. 214–15.) One of them always watched over Murai. (Tr. 215.) The first time Murai yelled for help, Ehinger and Marel strangled, beat and gagged Murai. (Tr. 217–19.) His captors did not feed Murai much during the five days. (Tr. 215–16.) On Sunday, after he had been held for three days, Murai was left alone and he managed to loosen his bonds. (Tr. 219–20.) He tried to get assistance from his neighbor, but when that failed, he went back into the apartment to find the key to the handcuffs. (Tr. 220.) Ehinger returned to the apartment and Ehinger and Marel subdued and beat Murai, removed the handcuffs, "hog-tied" Murai, blindfolded him, stuffed him head-first into a sleeping bag, and tethered his body to a table, using a cord as a leash. (Tr. at 220–27.) The police came to the apartment in response to the neighbor's complaint of a distraught Asian male, but Ehinger successfully turned the police away. (Tr. 590–91, 693.)

On Wednesday, July 22, 1987, after being imprisoned for five days, Murai was able to free his arms. (Tr. 240–41.) Murai waited

until Ehinger was sleeping (he snored), and freed his legs. (Tr. 241–42.) Murai left the apartment and asked a neighbor for help. (Tr. 242.) The police came and arrested Ehinger and Marel. (Tr. 172–74, 244–45, 355–57.) The police recovered over $4,000 in cash and several thousand dollars worth of Murai's belongings from a hotel room that Ehinger and Marel had rented. (Tr. 173, 261, 358–64, 368–74.)

### Ehinger's Trial Testimony

Ehinger testified in his defense. (Tr. 504.) Ehinger testified that when his check for the July rent bounced, Murai forced him to engage in homosexual sex acts. (Tr. 511–13.) On July 17, 1987, Ehinger came home and saw Murai hitting and sexually assaulting Marel, and so Ehinger hit Murai over the head with a jar. (Tr. 514–15.) Ehinger threatened to call the police, and tied Murai up. (Tr. 516.) Murai said that if Ehinger did not call the police, Ehinger could have $5,000 and certain property. (Tr. 517.) Murai gave Ehinger his bankcard to get money from the bank. (Tr. 518.) Ehinger then let Murai go. (Tr. 519.) On Sunday, July 19, Murai came into Ehinger's room with a knife and demanded his money and bankcard back. (Tr. 522.) Ehinger disarmed Murai, tied him up to talk to him, and then released him. (Tr. 524–26.) On Monday, Ehinger withdrew $1,000 from Murai's account and took some of Murai's property as "security" for Murai to pay him the balance of the promised $5,000. (Tr. 526–27.) On Wednesday, July 22, while Ehinger and Marel were moving out of the apartment, Murai returned with the police, who arrested them. (Tr. 527–29.) Ehinger directly denied Murai's testimony that he was "tied up for five straight days from July 17 to July 22." (Tr. 529–30.)[1]

### The Court's Charge to the Jury

At the charge conference outside the jury's presence, the trial judge stated that he planned to "instruct [the jury] with respect to the nine elements involved in kidnapping in the first degree, all of which are taken from criminal jury instructions." (Tr. 614.) Defense counsel made no objection. (See Tr. 614–20.) The judge also noted that defense counsel requested a charge on "kidnapping in the second degree as a lesser included offense." (Tr. 615.)

The trial judge charged the jury as to kidnapping in the first degree, as follows:

That section of the Penal Law [§ 135.25] insofar as it is applicable to this case reads as follows:

"A person is guilty of kidnapping in the first degree when he abducts another person and when he restrains the person abducted for a period of more than 12 hours with intent to accomplish or advance the commission of the felony."

*The crime of kidnapping among other things requires proof of abduction.* Abduction as defined by our law consists of a certain kind of restraint plus specified additional factors. According to the law a person restrains another person when he intentionally and unlawfully restricts such person's movements in such manner as to interfere substantially with his liberty.

By moving him from one place to another or by confining him either in the place where the restriction commences or at a place to which he has been moved without consent and with knowledge that the restriction is unlawful.

*According to the law a person abducts another person when he restrains a person with intent to prevent his liberation by either secreting or holding him in the place where he is not likely to be found or using or threatening to use deadly physical force.*

---

1. Marel also testified in her defense. (Tr. 425.) Marel testified that on July 17, 1987, she confronted Murai about some missing luggage and he responded that he was holding it because the July rent check had bounced. (Tr. 429.) Murai slapped Marel, pushed her to the bed, and pulled off her bikini top. (Tr. 429–30.) Murai threatened to rape Marel, but Ehinger came home and hit Murai in the head. (Tr. 430–31.) Ehinger and Murai had a conversation in the bedroom, and Marel left the apartment. (Tr. 432–33.) After working until 10 a.m. Saturday morning, Marel came home to the apartment and slept. (Tr. 434–35.) She left that afternoon without having seen Murai and went to the hotel where Ehinger had rented her a room. (Tr. 436.) Marel did not return to the apartment until Wednesday, when she returned to collect the rest of her possessions, and was arrested by the police. (Tr. 438–39, 527–29.)

Kidnapping requires proof of abduction and abduction requires proof of restraint plus the additional factors I have just specified. In order for you to find a defendant guilty of this crime, the People are required to prove from all of the evidence in the case beyond a reasonable doubt each of the following nine elements:

One, that from on or about July 17, 1987 to on or about July 22, 1987 in the County of New York, the Defendant tied up Hiroaki Murai thus restricting his movements in such manner as to interfere substantially with his liberty.

. . . .

*Seven, that the restraint constituted what the law calls abduction.*

*That is to say that a Defendant so restrained Mr. Murai with intent to prevent his liberation by secreting or holding him in a place where he was not likely to be found.*

(Tr. 767–70, emphasis added.)[2] The trial judge's charge is verbatim from the approved pattern jury instruction. *See N.Y.Crim. Jury Instructions,* PL § 135.25(1). Neither Ehinger's nor Marel's counsel objected to the kidnapping charge. (Tr. 796.)

The jury found Ehinger guilty of kidnapping in the first degree, robbery in the first and second degrees, and grand larceny in the third degree. (Tr. 856–57.) Ehinger was sentenced to 20 years to life on the kidnapping count, and lesser concurrent sentences on the other counts. *See People v. Ehinger,* 152 A.D.2d 97, 101, 547 N.Y.S.2d 302, 305 (1st Dep't 1989). Ehinger's direct appeal and state court collateral attacks on his conviction are described in the Court's April 18,

1996 Report and Recommendation (at pages 2–4).

## *ANALYSIS*

### *EHINGER'S HABEAS CORPUS PETITION SHOULD BE DISMISSED BECAUSE HE HAS FAILED TO PROVE THAT HIS APPELLATE COUNSEL WAS INEFFECTIVE* [3]

Ehinger claims that his appellate counsel was ineffective because counsel failed to raise two objections to his conviction for kidnapping: first, that trial counsel was ineffective for not challenging the kidnapping statute as unconstitutionally vague, and second, that Ehinger was convicted of kidnapping on a standard of proof less than guilt beyond a reasonable doubt. (Petition ¶ 12.)

### A. *Strickland v. Washington's Two-Part Test To Determine Ineffective Assistance Claims*

The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after convic-

---

**2.** The judge's charge as to second degree kidnapping similarly charged as to abduction, "that a Defendant so restrained Mr. Murai with intent to prevent his liberation by secreting or holding him in a place where he was not likely to be found." (Tr. 774–75, 776.)

**3.** Because the Court recommends that Ehinger's petition be dismissed on the merits, the Court need not address the effect, if any, of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No. 104–132, 110 Stat. 1214), on habeas corpus petitions, such as Ehinger's, in non-capital cases filed and pending before the Act's April 24, 1996 enactment. Two courts in the Second

Circuit have ruled on habeas corpus petitions pending at the Act's enactment without addressing the retroactivity of the Act. *Rivera v. United States,* 930 F.Supp. 892, 894 (S.D.N.Y.1996) (noting that "procedural rules in effect at the time of decision but not in effect when the suit was commenced may generally be applied without raising concerns of retroactivity," but not deciding Act's retroactivity because petition dismissible under old law as well); *Moates v. Barkley,* 927 F.Supp. 597, 597–98 (E.D.N.Y.1996) (same). One court outside this circuit has determined the Act to be retroactive to petitions pending at the Act's enactment. *Leavitt v. Arave,* 927 F.Supp. 394 (D.Idaho 1996).

tion.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Id.* at 689, 104 S.Ct. at 2065.

Second, the defendant must show that he was prejudiced by counsel's performance. *Id.* at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated or trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of errors on the remaining findings, *a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.*

*Id.* at 695–96, 104 S.Ct. at 2069 (emphasis added).

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Id.* at 696, 104 S.Ct. at 2069. The

focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a' court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.

The *Strickland* test applies to appellate as well as trial counsel. *See, e.g., Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *Benn v. Stinson,* 917 F.Supp. 202, 205 (S.D.N.Y.1995) (Peck, M.J.).

On appeal, counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while "winnowing out weaker arguments." *E.g., Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *Mayo v. Henderson,* 13 F.3d at 533; *Benn v. Stinson,* 917 F.Supp. at 206. Further, reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *E.g., Jones v. Barnes,* 463 U.S. at 754, 103 S.Ct. at 3314; *Tsirizotakis v. LeFevre,* 736 F.2d 57, 65 (2d Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Benn v. Stinson,* 917 F.Supp. at 206. Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d at 533; *see also, e.g., Benn v. Stinson,* 917 F.Supp. at 206.

Ehinger's appellate counsel chose eight relevant and promising issues for appeal, and presented those issues in a well-reasoned brief. (*See* McCullough Aff.Ex. A: Brief for Defendant–Appellant to the First Depart-

ment at 12–26.) [4]  The due process rights implicated in several of the appeal points are standard and frequently successful appeal points in many criminal trials. *See, e.g., Benn v. Stinson,* 917 F.Supp. at 207. Further, counsel properly appealed the length of Ehinger's sentence, since Ehinger was given close to the maximum sentence.[5]  Defense counsel's lack of success on appeal provides no reason to second-guess his judgment in raising these issues. *See, e.g., Benn v. Stinson,* 917 F.Supp. at 207; *Curzi v. United States,* 773 F.Supp. 535, 542 (E.D.N.Y.1991), *aff'd sub nom. Laaman v. United States,* 973 F.2d 107, 113–14 (2d Cir.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Ehinger does not claim that he urged his appellate counsel to not raise these issues and instead to raise trial counsel's ineffectiveness.[6]

Thus, the issues raised by Ehinger's appellate counsel on his direct appeal were appropriate, and the Court will not second guess counsel's professional judgment. Nevertheless, the Court also must examine whether appellate counsel's failure to raise the two claims related to the "abduct" element of the kidnapping statute constitutes ineffective assistance under the *Strickland* test. There is no need for the Court to further address *Strickland*'s first prong, however, because Ehinger cannot satisfy the second *Strickland* prong, that there was a "reasonable probabil-

ity" that raising those issues on appeal would have lead to a different result.

### B. *The New York Kidnapping Statute is Not Unconstitutionally Vague*

Ehinger's first claim of ineffective appellate counsel is that counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to challenge the kidnapping statute as unconstitutionally vague. The underpinning of this argument is that the kidnapping statute is void for vagueness. Had appellate counsel raised the ineffective assistance claim on appeal, the result would not have differed, because the Appellate Division ruled on the merits of Ehinger's vagueness attack on New York's kidnapping statute. Thus, Ehinger fails to satisfy *Strickland*'s second prong.

While the Appellate Division held that Ehinger had waived his objection to the vagueness of the kidnapping statute by failing to preserve it for appeal, *People v. Ehinger,* 152 A.D.2d at 101, 547 N.Y.S.2d at 304, the Appellate Division also considered and rejected Ehinger's "void for vagueness" challenge on its merits. *Id.* The likelihood that Murai would not be found if restrained in the apartment he shared with Ehinger for over 12 hours (in fact, for 5 days), was a question of fact for the jury, and this Court agrees with the Appellate Division that on

---

**4.** Ehinger's counsel argued the following eight points on appeal:

    (1) The term "abduct" in the kidnapping statute is void for vagueness as applied to Ehinger's case.

    (2) The trial court committed reversible error by refusing to allow Ehinger to introduce direct evidence that Murai offered to drop prosecution for $100,000.

    (3) The trial court denied Ehinger's right to counsel by not allowing him to confer with counsel during his cross-examination.

    (4) Ehinger was denied a fair trial due to the prosecutor's misconduct during summation.

    (5) Ehinger was denied a fair trial and his right to confront his accuser by the court's use of an unqualified interpreter.

    (6) The court abused its discretion in denying Ehinger's motion to dismiss the kidnapping charge.

    (7) The statutorily mandated sentence for kidnapping in this case was so disproportionate to the crime that it constitutes cruel and unusual punishment.

    (8) The court abused its discretion by excessively sentencing Ehinger on the kidnapping and the first degree robbery counts.

    (McCullough Aff.Ex. A: Brief for Defendant–Appellant to the First Department at 12–26.)

**5.** The maximum sentence for kidnapping in the first degree, a class A felony, is 25 years to life; Ehinger received 20 years to life. The maximum sentence for robbery in the first degree, a class B felony, is 25 years; Ehinger received 7 to 21 years. N.Y.Penal Law §§ 70.00, 135.25, 160.15; *see People v. Ehinger,* 152 A.D.2d at 101, 547 N.Y.S.2d at 305.

**6.** *See Curzi v. United States,* 773 F.Supp. at 542 ("Moreover, although petitioners here do not contend that they urged counsel to argue the illegality of the search of the Cleveland residence on appeal, it is instructive to note that appellate counsel cannot be faulted for not pursuing even claims which his or her client presses him to pursue.").

the facts adduced at trial, Ehinger constitutionally could be convicted of kidnapping as a matter of law. Accordingly, Ehinger's first claim of ineffective assistance of appellate counsel should be dismissed.

The "void for vagueness" doctrine holds that "criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law." *Jordan v. De George*, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951). The test is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.*, 341 U.S. at 231–32, 71 S.Ct. at 708. The "essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Id.*, 341 U.S. at 230, 71 S.Ct. at 707.

In applying the "void for vagueness" test to the New York kidnapping statute, the Court must assess whether the statute is sufficiently determinate. If the general class of offenses to which the statute is directed is clearly within its terms, the statute will not be struck down as vague, even though there may be some questionable marginal cases. *See, e.g., United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

Ehinger's conviction of kidnapping in the first degree was based on a violation of New York Penal Law § 135.25, which provides that:

A person is guilty of kidnapping in the first degree when he abducts another person and when:

.    .    .    .    .

2. he restrains the person abducted for a period of more than twelve hours with intent to:

.    .    .    .    .

(b) accomplish or advance the commission of a felony . . .

N.Y.Penal Law § 135.25(2)(b) (McKinney 1987). "Abduct" is statutorily defined to mean "to restrain a person with intent to prevent his liberation by . . . (a) secreting or holding him in a place where he is not likely

to be found, . . . ." N.Y.Penal Law § 135.00(2) (McKinney 1987).

Facially, the statute is sufficiently determinate because it criminalizes a general class of conduct, namely restraining a person against their will for an extended period of time. The only issue that Ehinger raises is a claim that the legislature did not intend the statute to criminalize the detention of a person in their own residence. (*See* Petition at 5, 5b.) However, the *Jordan* test does not rely on the legislative intent behind a statute, but rather on whether the statute provides a sufficiently definite warning of criminal conduct based on common understanding. *See Jordan*, 341 U.S. at 231–32, 71 S.Ct. at 708. Restraining someone in a jointly shared apartment is encompassed by the definition of abduct, as "secreting or holding him in a place where he is not likely to be found." Indeed, Murai was not found for five days, and the effectiveness of holding him in their shared apartment was demonstrated when the police first came and Ehinger convinced them that nothing was wrong. (Tr. 590–91, 693.)

Because the Court agrees with the Appellate Division that the kidnapping statute is not unconstitutionally vague, Ehinger's appeal would not have been decided differently if appellate counsel raised trial counsel's alleged ineffectiveness for failure to challenge the statute. Ehinger's first ineffective assistance claim falls under *Strickland*'s second prong.

### C. *The Evidence Adduced at Trial is Sufficient to Support Ehinger's Conviction of Kidnapping in the First Degree*

Ehinger's second claim of ineffective assistance of appellate counsel is based on counsel's failure to argue that Ehinger was convicted of kidnapping on a standard of proof less than guilt beyond a reasonable doubt. (*See* Petition at 5, 5b.) The underpinning of this claim is also that the kidnapping statute may not be applied to restraining a person in their own residence. (*Id.*) Ehinger claims that element seven of the judge's charge to the jury on the kidnapping count was not proven beyond a reasonable doubt. Here,

also, the Appellate Division decided this claim on the merits, and decided it adversely to Ehinger. *See People v. Ehinger,* 152 A.D.2d at 101, 547 N.Y.S.2d at 304–05.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (*quoting In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt ..." *Jackson v. Virginia,* 443 U.S. at 317, 99 S.Ct. at 2788. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2791–92.

Petitioner Ehinger bears a "very heavy burden":

> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*United States v. Carson,* 702 F.2d 351, 361 (2d Cir.) (citations omitted), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). *Accord, e.g., United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (burden on defendant is "'very heavy'" and all inferences must be drawn in the government's favor). "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at trial established guilt

beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2789 (citations omitted); *see also, e.g., Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984).

The "jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss,* 999 F.2d at 696 (*citing United States v. Roman,* 870 F.2d 65, 71 (2d Cir.), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989)). The role of this Court is clear: "[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution." *Anderson v. Senkowski,* No. CV–92–1007, 1992 WL 225576 at *3 (E.D.N.Y.1992) (citations omitted), *aff'd,* 992 F.2d 320 (2d Cir.1993); *Fagon v. Bara,* 717 F.Supp. 976, 979 (E.D.N.Y.1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony.").

Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [Ehinger's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence.... We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981).

Ehinger's claim is based on his view that abduct "requires a showing that some type of carrying away or substantial removal occurs so as to demonstrate a fact pattern usually associated with genuine kidnapping. No such fact pattern was proven in petitioner's

case ..." (Petition at 56.) While "traditional" kidnapping may involve such a carrying away, the New York statute is not so limited. The kidnapping statute prohibits confining the victim "either in the place where the restriction commences or at a place to which he has been moved without consent." (Tr. 767; *see also N.Y.Crim.Jury Instructions,* PL § 135.25(1).) In addition, the victim must be abducted, by "secreting or holding him in a place where he is not likely to be found." (Tr. 767–68; *see also N.Y.Crim. Jury Instructions,* PL. § 135.25(1).) As the Appellate Division held, a reasonable jury could have found Ehinger guilty of kidnapping for confining Murai in the place where the restriction commenced, and by secreting or holding Murai in the apartment he shared with Ehinger, which could be a place where he was not likely to be found. As the Appellate Division stated:

> The degree of likelihood or unlikelihood of discovery of the victim's hiding place simply presented a factual question for the jury to resolve in light of all the circumstances of the abduction and restraint, and is not susceptible to disposition as a matter of law on this record. As noted long ago by Edgar Allan Poe's great detective, C. Auguste Dupin, in the case of "The Purloined Letter," sometimes the most effective way to conceal something may be to leave it in plain view. Surely this jury was free to find that the isolation of a Japanese music student, with few local friends or acquaintances, could be most effectively accomplished by imprisonment in his own home in the very manner carried out by defendants. Indeed, defendants were successful in fobbing off the police on their first visit to the door of the apartment when the officers were summoned to the premises by an alarmed neighbor.

*People v. Ehinger,* 152 A.D.2d at 101, 547 N.Y.S.2d at 304–05. This Court agrees with the Appellate Division, which found that the likelihood of Murai's discovery in these circumstances was a factual question for the jury to resolve, and which it did resolve against Ehinger.

Accordingly, Ehinger's second claim of ineffective assistance of appellate counsel for failure to challenge the sufficiency of the evidence should be dismissed because the evidence was sufficient, and thus the petition does not satisfy *Strickland*'s second prong.

## CONCLUSION

For the reasons set forth above, I recommend that the Court dismiss Ehinger's habeas corpus petition on the merits.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Michael B. Mukasey, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Mukasey. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

DATED: New York, New York
July 3, 1996.