56 F.3d 70
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Fahim AL-QAADIR, aka LeJohn Reese, Petitioner-Appellant,
v.
Michael GALLEGOS, Superintendent, Respondent-Appellee.
 No. 94-15673.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 15, 1995.
Decided June 2, 1995.
 
 1
 Before: TANG and O'SCANNLAIN, Circuit Judges; MERHIGE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Al-Qaadir appeals the denial of his 28 U.S.C. Sec. 2254 petition for writ of habeas corpus.
 
 
 4
 * As his first ground for federal relief, Al-Qaadir alleges that his trial counsel was ineffective.
 
 
 5
 To demonstrate ineffective assistance of counsel, a habeas petitioner must show first that counsel's performance fell below that of a reasonable attorney and, second, that counsel's errors created a reasonable probability that, but for the errors, the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). "A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984).
 
 
 6
 We analyze Al-Qaadir's specific contentions under the Strickland standard.
 
 
 7
 * Al-Qaadir argues that trial counsel, in his closing argument, improperly conceded that the homicides at issue were "murder." This concession, Al-Qaadir claims, precluded the jury from considering the lesser included charge of manslaughter.[1] Similarly, Al-Qaadir also contends that, in closing, counsel failed to argue all available defenses.
 
 
 8
 We are not persuaded that counsel conceded the degree of the crime committed. It is likely, as the state asserts, that counsel used the word "murder" in the colloquial sense to indicate that people had been killed, and not in the legal sense -- that is, not to indicate that the crime at issue was murder rather than manslaughter.
 
 
 9
 Even if counsel intended to concede the degree of the crime, counsel maintained throughout his closing argument that Al-Qaadir had not been involved in the shooting and that the prosecution had failed to prove such involvement beyond a reasonable doubt. Counsel's concession thus reflects a strategy that does not fall outside the broad range of competent assistance.
 
 
 10
 Similarly, we perceive a strategy supporting counsel's decision not to argue all available defenses in closing. Based on his understanding of the evidence, counsel apparently determined that Al-Qaadir's best defense was one of non-involvement. Counsel could have argued, in the alternative, that the most the evidence supported was a manslaughter conviction; however, counsel could have determined that to argue such an alternative would have signaled to the jury that counsel was not confident of his client's non-involvement. Counsel's tactics, although unsuccessful, were not unreasonable.[2]
 
 B
 
 11
 Al-Qaadir next argues that trial counsel's cross-examination of the prosecution's witnesses fell below reasonable standards of professional competence. As Al-Qaadir describes it, counsel made the choice to "forego cross-examination of the entire prosecution case." Our review of the trial transcript persuades us otherwise.
 
 
 12
 Al-Qaadir first takes issue with counsel's failure to recross prosecution witness Felicia Sheppard after she testified on redirect that, according to co-defendant Adger, Al-Qaadir had participated in the shootings. Despite Al-Qaadir's arguments to the contrary, counsel's decision not to recross Sheppard is readily justifiable. Following Sheppard's direct testimony, Adger's counsel, in cross-examination, established that Sheppard doubted the veracity of Adger's statements. Thus, Sheppard's later implication of Al-Qaadir, based on Adger's statements, was already in question. Further, Al-Qaadir's counsel may have concluded that to recross Sheppard, who had been severely injured in the shooting, would be counterproductive. In addition, given the dangers inherent in cross-examination, Al-Qaadir's counsel may have chosen not to recross Sheppard for fear that she might further implicate Al-Qaadir. Such strategic decisions do not demonstrate ineffective assistance.
 
 
 13
 Al-Qaadir next argues that counsel should have cross-examined Lamont Butcher regarding his motive to lie about Al-Qaadir's involvement in the shooting. Al-Qaadir's claim lacks merit. Counsel challenged Butcher's testimony on precisely this ground.[3] Although counsel's cross on this point was not extensive -- counsel spent the bulk of the cross-examination seeking to establish that Butcher was on the floor of the vehicle and thus could not see his attackers -- this may have been due to the fact that co-defendant Gaines' counsel had already questioned Butcher in depth on this point.
 
 
 14
 Al-Qaadir next contends that counsel should have cross-examined prosecution witness LaSalle Watts regarding Watts' failure to inform the police of Al-Qaadir's involvement in the shooting. Contrary to Al-Qaadir's claim, however, counsel indeed questioned Watts as to why he failed to inform the police of this fact.
 
 
 15
 Al-Qaadir's final contention is that counsel was ineffective in failing to cross-examine prosecution witnesses Kevin Phelps, Latrice Goshen, and Darika Bates. Al-Qaadir's claim is without merit. Each of the challenged witnesses gave testimony in large part favorable to the defense. Phelps denied having told others that Al-Qaadir had been involved in the shooting. Goshen testified that her earlier statements to police, in which she implicated Al-Qaadir, were untrue. Bates, both on direct and when cross-examined by co-defendant Gaines' counsel, testified that she lied when she told police that she had driven Al-Qaadir to the scene of the crime. In light of the testimony given, counsel's decision not to cross-examine Phelps and Goshen, and his limited cross-examination of Bates, are readily supportable.
 
 
 16
 Viewed in its entirety, counsel's conduct does not fall outside the wide range of reasonable professional assistance. See Kimmelman v. Morrison, 477 U.S. 365, 386 (1985) (reviewing court must assess counsel's overall performance to determine whether specific acts or omissions overcome presumption that counsel rendered adequate assistance). Moreover, with each of the above challenges, Al-Qaadir has made no showing of prejudice. Accordingly, Al-Qaadir's claim of ineffective assistance must fail.
 
 II
 
 17
 As his second ground for federal relief, Al-Qaadir argues that the trial court erroneously instructed the jury on the doctrine of transferred intent, in violation of California law.
 
 
 18
 Habeas relief will not be granted based upon mere state law error. To merit relief, a habeas petitioner must demonstrate that the allegedly erroneous instruction violated some constitutional right. See Estelle v. McGuire, 112 S. Ct. 475, 482 (1991) (reviewing court must determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" (quotation omitted)). If the petitioner makes such a showing, the reviewing court must then determine whether the violation at issue constituted harmless error.[4] See Rose v. Clark, 106 S. Ct. 3101, 3107-08 (1986). In assessing whether error is harmless, the court "must review the entire record, and assess the weight of the evidence to determine whether it can conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Herd v. Kincheloe, 800 F.2d 1526, 1528 (9th Cir. 1986) (quotations omitted).[5]
 
 
 19
 Because we are persuaded that the alleged error was harmless, we need not determine whether the challenged instruction was erroneous under California law, nor need we reach the issue of whether the instruction, if erroneous, violated due process. In support of our conclusion, we note the ample evidence of intent presented at trial. The assailants, lying in wait, fired first at Jackson and then at the truck. Presumably to ensure that no witnesses remained alive, one of the assailants opened the truck door and fired into the cab. The vehicle was riddled with bullets. Jackson, Brown, and Sheppard each received multiple gunshot wounds. Butcher was shot twice. Numerous bullet casings were collected at the scene. Such thoroughness suggests an intent to kill all the occupants of the vehicle.
 
 
 20
 Further, we note also that the jury found Al-Qaadir guilty of murder on count 2, a count for which no transferred intent instruction was given. Without the benefit of a transferred intent instruction, and based upon the same facts alleged in counts 3 and 4, the jury found beyond a reasonable doubt that Al-Qaadir possessed the requisite intent to kill. Based upon this same evidence, the jury also found Al-Qaadir guilty of the attempted murders charged in counts 3 and 4. Ultimately then, the jury made its decision on counts 3 and 4 independent of the presumption of intent created by the transferred intent instruction. See Sullivan, 113 S. Ct. at 2081 (reviewing court must determine "whether the guilty verdict actually rendered in this trial was surely unattributable to the error").
 
 
 21
 Because the alleged error was harmless, reversal is not warranted.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Al-Qaadir argues that counsel's conduct was so egregiously prejudicial that we should presume ineffective assistance. See United States v. Swanson, 943 F.2d 1070, 1074 (9th Cir. 1991) (counsel's assistance is per se ineffective where counsel conceded in his closing argument that there was no reasonable doubt as to his client's guilt). Unlike counsel in Swanson, Al-Qaadir's counsel did not admit that his client was guilty, but rather steadfastly maintained his innocence. Accordingly, we perceive no absence of meaningful adversarial testing that would require us to find a per se violation of the Sixth Amendment
 
 
 [2]
 Al-Qaadir also claims that counsel's closing argument was filled with "inconsistencies" and "irrelevancies" and that counsel "proposed an unrecognized racial sympathy defense unsupported by the evidence and counter to the instructions received by the jury (not to consider sympathy)." It is true that, in closing, counsel noted Al-Qaadir's race, and expressed a hope that the jury would not convict him solely because of it. Such an approach reflected counsel's strategic decision to appeal to the jury's racial sensibilities and thus does not constitute ineffective assistance
 
 
 [3]
 Specifically, counsel asked "It is true, isn't it sir, that you have told a number of people out in the community within Richmond that you were going to cooperate with the police in order to get the best disposition of any charges that had been lodged against you?"
 
 
 [4]
 Some instructional errors are so serious that they amount to "structural defects" which defy analysis by harmless error standards. See, e.g., Sullivan v. Louisiana, 113 S. Ct. 2078, 2082 (1993) (deficient reasonable doubt instruction not amenable to harmless error review). Despite Al-Qaadir's argument to the contrary, the alleged instructional error in this case is not of structural dimension. By giving a transferred intent instruction, the court allowed the jury to presume Al-Qaadir's intent with regard to counts 3 and 4. Courts have traditionally subjected such errors -- errors which allow the jury to presume an element of the crime -- to harmless error review. See Rose v. Clark, 106 S. Ct. 3101, 3107-08 (1986) (erroneous malice instruction that all homicides are presumed to be malicious in absence of evidence to the contrary is a due process violation subject to harmless error review); see also Carella v. California, 109 S. Ct. 2419, 2421 (1989) (per curiam) (instruction containing erroneous conclusive presumption subject to harmless error review)
 
 
 [5]
 The district court correctly sets forth the standard for harmless error review, citing Herd. However, the district court then incorrectly "[a]ssess[ed] the evidence in the light most favorable to the prosecution." District court order at 20. As the district court explains, this is the standard for analyzing sufficiency of the evidence. District court order at 19. This standard should not be used in conjunction with harmless error review. It is impossible to determine whether an error was harmless beyond a reasonable doubt by construing evidence in the light most favorable to the prosecution. Such construction gives the benefit of the doubt to the prosecution. The two standards are mutually exclusive