Julio **FERNANDEZ**, Petitioner,

v.

Charles **DUFRAIN**, Superintendent, Respondent.

No. 97 CIV. 5995 LAK AJP.

United States District Court, S.D. New York.

June 30, 1998.

**408**

Julio Fernandez, Malone, NY, Pro Se.

Nancy D. Killian, Asst. District Attorney, Bronx County, Bronx, NY, Defendant's Counsel.

## ORDER

KAPLAN, District Judge.

Petitioner Julio Fernandez is before this Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Fernandez asserts that his conviction for attempted second degree murder is constitutionally infirm because (1) the issue of his intent to kill was submitted to the jury on a theory of transferred intent and (2) the jury's finding of intent to kill was not supported by sufficient evidence. For the reasons set forth below, Fernandez's motion is denied.

A short recitation of the underlying facts is in order. On August 2, 1990, at approximately 2:00 a.m., a group of teenagers including Yanira Correa were leaving a park in the Bronx when Fernandez approached them.[1] Fernandez, whom Ms. Correa knew, asked Ms. Correa to return with him to the park in order to meet with Fernandez's brother.[2] Ms. Correa declined, at which point Fernan-

dez brandished a handgun and started firing it into the air.[3] One of Ms. Correa's male companions then asked Fernandez, "Why don't you shoot at us?"[4] Fernandez responded by firing in the direction of the group of teens, and then returned to the park.[5]

Ms. Correa and her companions continued on their way and, within 15 minutes, had reached the vicinity of the Grand Concourse and 164th Street.[6] There, they witnessed Fernandez emerge from a cab, gun in hand.[7] He fired three shots into the midst of the group. One bullet struck Ms. Correa in the chest.[8] Fernandez then fled the scene of the crime.[9]

Fernandez subsequently was indicted and convicted on numerous charges, including attempted murder in the second degree. That charge, contained in Count One of the indictment, stated that Fernandez, "with the intent to cause the death of a person, did attempt to cause the death of Yanir[a] Correa by shooting her in the chest with a loaded pistol."[10] Significantly, the jury was instructed that, in determining whether Fernandez had the requisite *mens rea* for attempted murder, it could consider whether Fernandez intended to cause the death either of Ms. Correa or one of the other members of the group into which Fernandez fired.[11]

Fernandez's conviction was affirmed on appeal by both the First Department[12] and the Court of Appeals.[13] Significantly, the Court of Appeals rejected Fernandez's contention

---

**1.** *People v. Fernandez,* 88 N.Y.2d 777, 779, 650 N.Y.S.2d 625, 627, 673 N.E.2d 910 (1996) ("*Fernandez II* ").

**2.** *Id.*

**3.** *Id.*

**4.** 88 N.Y.2d at 779–80, 650 N.Y.S.2d at 627, 673 N.E.2d 910.

**5.** 88 N.Y.2d at 780, 650 N.Y.S.2d at 627, 673 N.E.2d 910.

**6.** *Id.*

**7.** *Id.*

**8.** *Id.*

**9.** *Id.*

**10.** Pet. Resp. at 1; Tr. at 174.

**11.** Tr. at 176, 182, 190.

**12.** *People v. Fernandez,* 215 A.D.2d 234, 626 N.Y.S.2d 190 (1st Dept.1995) (rejecting claim that transferred intent is not permitted to establish intent to kill for purposes of attempted second degree murder, and finding evidence sufficient to support verdict) ("*Fernandez I* ").

**13.** *Fernandez II,* 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910 (rejecting claim that attempted second degree murder conviction was flawed because of lack of proof of defendant's specific target, and finding evidence sufficient to support verdict).

that the failure to prove the identity of his specific intended target meant that the specific intent to kill element of the attempted second degree murder charge could not have been satisfied without resort to the transferred intent doctrine.[14]  Instead, the Court of Appeals concluded, the *mens rea* requirement of this particular crime would be satisfied by a finding that Fernandez intended to kill either Ms. Correa or one of the others in the group and that "there was no need to link defendant's intent to kill to the actual victim." [15]  The Court of Appeals concluded also that there was sufficient evidence to support the jury's finding of murderous intent.[16]

■  Fernandez's petition essentially renews his arguments concerning (1) the prosecution's failure to prove the identity of his specific intended target, and (2) the sufficiency of the evidence supporting the jury's finding of intent to kill.[17]  In a report and recommendation ("R & R") dated April 3, 1998, Magistrate Judge Andrew J. Peck recommended that the Court deny Fernandez's petition.  The R & R notes first that New York's highest court already has rejected Fernandez's claims concerning the permissibility of establishing the intent element of attempted second degree murder under New York law through proof of an intent to kill persons other than the actual victim.[18]  It goes on to point out that Fernandez has failed to articulate how the Court of Appeals' construction of the intent element might violate the federal constitution.[19]  Finally, the R & R concludes that there was sufficient evidence to support the jury's finding of intent to kill.[20]

Fernandez's objection to the R & R depends upon the following chain of logic: that he was indicted solely for the attempted murder of Ms. Correa;  that the issue of intent was submitted to the jury on the alternative theories that Fernandez intended to kill Ms. Correa or that he intended to kill one of the others in the group;  that there was no evidence to support a finding that he intended to kill Ms. Correa;  that his conviction therefore necessarily rested upon a finding that he intended to kill one of the others in the group or even no one in particular;  and that this result in some manner is unconstitutional.

There are numerous problems with Fernandez's argument.  Foremost among these is the fact that the New York Court of Appeals has ruled that the *mens rea* element of attempted second degree murder under New York law can be satisfied by proof that the defendant intended to kill either the actual victim or some other person.[21]  This Court has no authority to disturb that conclusion as a matter of New York law.  Nor has Fernandez offered any reason to suppose that the New York Court of Appeals' decision is repugnant to the U.S. Constitution, which is the sole concern of a federal habeas court.

■  An additional problem is Fernandez's contention, repeated in the face of consistent rejection by the New York appellate courts, that there was insufficient evidence to support a finding that he intended to kill Ms. Correa or, for that matter, any of the others in the group that he chased down and fired hollow point bullets at that night.  This Court has no difficulty in concluding that there was sufficient evidence from which a reasonable jury could have concluded that Fernandez intended to kill Ms. Correa, one or more of the others, or both.

As to Ms. Correa, the evidence is clear that it was Ms. Correa's rejection of Fernandez's request that she accompany him back

14.  *Id.* at 628–29, 673 N.E.2d 910.

15.  *Id.* at 629, 673 N.E.2d 910.

16.  *Id.*

17.  Pet. Br. at 1, 9–11.

18.  R & R at 25 (*Fernandez II*, 88 N.Y.2d at 783, 650 N.Y.S.2d at 629, 673 N.E.2d 910).

19.  The R & R noted further that even were Fernandez to establish that his conviction depended upon transferred intent, there was no basis to conclude that this inherently would violate the constitution.  *Id.* at 25–26 (noting that transferred intent attempted murder is a crime in several states and at the federal level).

20.  *Id.* at 20.

21.  *Fernandez II*, 88 N.Y.2d at 783, 650 N.Y.S.2d at 629, 673 N.E.2d 910.

to the park, occurring in front of his peers and acquaintances, that initiated the violence: Fernandez began to fire his weapon at that point, prior to the time when another member of the group taunted him.

Similarly, there was sufficient evidence to support a finding that Fernandez intended to kill some or all of the others in the group. In addition to Ms. Correa's refusal to join him, Fernandez was taunted by another member of the group. Minutes after that embarrassing incident, which had already caused him to shoot in the direction of Ms. Correa and her friends, Fernandez altered his appearance, took a cab to an intercept point, and fired his gun directly at the group of teens.

Thus, a reasonable jury could and did conclude that he had the specific intent to kill either Ms. Correa or some or all of her friends and that he engaged in conduct tending to convert that intent into reality.

Accordingly, the petition for a writ of habeas corpus is denied.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Julio Fernandez was convicted of attempted second degree murder and sentenced to six to twelve years imprisonment, when he fired three shots into a group that included the victim and her friends, shooting the victim in the chest. Fernandez's habeas corpus petition argues that his conviction violates the Fourteenth Amendment because the prosecutor did not prove who his precise target was, and he alleges that there is no crime of attempted "transferred intent" murder. (*See* Petition ¶ 12(A); *see also* Fernandez Br. at 8–11.) Fernandez claims that an attempt to kill someone other than the victim that results in injury to the victim is *not* attempted murder of the victim (although it may be attempted murder of the intended target). Liberally read, Fernandez's petition and supporting brief appear to raise two

separate but related issues: (1) the sufficiency of the evidence that Fernandez intended to kill anyone, and (2) whether attempted transferred intent murder is a crime under New York law. For the reasons set forth below, I recommend that the Court deny petitioner Fernandez's habeas corpus petition.

## FACTS

### The Indictment

Fernandez was indicted for, *inter alia*, second degree murder, as follows:

"The defendant, Julio Fernandez, on or about August 2, 1990, in the County of the Bronx, with intent to cause the death of a person, did attempt to cause the death of Yanira Correa by shooting her in the chest with a loaded pistol."

Affidavit of ADA Nancy Killian, Ex. 1: Fernandez 1st Dep't Br. at 3, quoting indictment; *accord*, Killian Aff. Ex. 3: Fernandez N.Y. Ct.App. Br. at 4; *see also* Killian Aff. Ex. 2: Gov't 1st Dep't Br. at 13.

### The Trial Evidence

On August 2, 1990 at approximately 2:00 A.M., Fernandez approach Yanira Correa and her friends on 164th Street, the Bronx. (A5–9, A17–18, A20–23, A51–54.) [1] Fernandez told Correa that he wanted her to go to the park with him to talk to his brother. (A9, A17.) Correa refused, saying she was going home. (A9.) Correa knew Fernandez and his brother before that night, and she described this conversation as "friendly." (A17–18.)

One of the boys in Correa's group said something to Fernandez. (A10, A19.) Fernandez was handed a gun by one of the girls he was with, and he fired three shots into the air. (A10–12, A24, A26–28, A43, A56–57.) After the first shot, one of the guys in Correa's group yelled at Fernandez, "[w]hy don't you shoot at us?" (A56–60, A69.) Fernandez then fired near the group of people. (A45, A69.)

---

**1.** References to "A" are to the pages of the trial transcript contained in the Government's Appen-

dix to the New York Court of Appeals.

After this first incident, Correa and her friends continued walking along 164th Street towards the Grand Concourse. (A29.) Around fifteen minutes after the first incident, one of Correa's friends, Ms. Virella, saw Fernandez get out of a white car and begin to shoot in the group's direction. (A34–39, A45–48, A65–66, A70.) Fernandez had changed his shirt and put on a baseball cap. (A38, A47.) Fernandez fired three shots, one of which hit Correa in the chest. (A13–16, A39–40, A48, A64, A103–04.) Virella "started screaming Julio's [Fernandez's] name." (A40, A64.) Fernandez ran away and escaped in a cab. (A40, A49, A64–65.) The police came, and an ambulance took Correa to the hospital. (A40, A67, A88–89.) The emergency room doctor testified that Correa's wound was only about an inch from Correa's heart and posed a "great risk of death." (A113–14.)

Fernandez was arrested in a nearby park, and the police recovered a gun from a garbage can where a witness had seen Fernandez drop it. (A71–78, A83–85, A91–95.)

### Trial Motions and Summation

At the close of the People's case, the defense made a pro forma motion for a trial order of dismissal on the ground that the People failed to establish a prima facie case. (A120–21.) The trial judge denied the motion. (A121–23.)

During a preliminary charge conference, the Assistant District Attorney requested a "transferred intent charge":

[ADA] GILL: ... Judge, first *I would ask that you give a transferred intent charge.* I believe that it would be helpful to the jury; I think it's appropriate in this case. If the jury were to find that the defendant was the shooter on the Grand Concourse, and did in fact shoot Yanira Correa, they may have a problem with, "Well, why was he intending to shoot her?" *It's my theory that he intended to shoot at the crowd, probably her boyfriend, but that intent to strike someone in the crowd can be transferred to the person who was actually hit.* I think that would be helpful to the jury.

(A134, emphasis added.) The trial judge responded:

THE COURT: I mean frankly, I have difficulty—the problem in this case is that there is a lack of testimony about reason, motive; and so it seems to me that either of you can make any argument.

(A135–36.) The judge added that he thought the intent evidence was "minimal at best" and that the case was "close to a recklessness case." (A141–42.) However, when defense counsel argued that there was no evidence that Fernandez intended to kill anyone, the trial judge responded, "except for the fact that the gun was fired and it hit her," *i.e.,* Ms. Correa. (A136.) The trial judge indicated he would charge the jury, as follows:

THE COURT: ... The issue that they have to find is, was there an intent to kill someone. And they can determine what the intent was from all of the evidence connected with the incident. And if they find that there was an intent to kill, then they can go on to determine whether or not someone was in fact—with respect to Count Two, that someone was in fact seriously physically injured; and with respect to Count One, whether that resulted in an attempt: that is, conduct which did not result in, but could have led to the death of the complaining witness.

(A140.)

The defense renewed its motion to dismiss the attempted murder count, on the ground that there was no evidence that Fernandez intended to kill anyone. (A144–51.) The prosecutor argued that the jury could infer intent from the shots in the air and "why don't you shoot at us" aspects of the first incident, and then Fernandez's firing three shots point blank into the group in the second incident, hitting Correa near her heart. (A151–55.) The trial court denied the defense motion, finding that the deliberate shooting into the group in the second incident "establishes an intent to ... kill someone in the group." (A158–59; *see also* A160–61.)

In summation, the prosecutor explained the crime thusly:

[ADA] GILL: Ladies and gentlemen, what we have here, as I said in my opening, is *a senseless shooting* for no good reason. That doesn't mean it didn't happen this way.

What we have here is a defendant who thinks that he can gain the respect of another group of kids, gain the attention of another group of kids by taking out a gun and firing some shots in the air. . . .

Ladies and gentlemen, thinking that he's going to maybe intimidate them, scare them, get their attention, get some respect. But instead, the opposite happens. They ridicule him. Hey, Julio, [why] don't you shoot at us. They're not scared. . . .

What the defendant does, that's criminal, ladies and gentlemen. And he's not going to fire in the air any more. He's going to bring his hands down and fire in the direction of the group, just a few feet away from where Gloria [Virella] is standing. He's firing two more shots.

*He wants the respect of these people, he's being dissed.* He's being disrespected in front of the two girls he's with. . . . He knows these people. He has to save face. He's going to fire two shots in their direction.

What happens? More words, more words from these guys. They don't even run. A few of the girls run. They don't even run. Disrespect. He wanted their respect. *He's going to get their respect, even if he has to kill somebody.*

\*      \*      \*      \*      \*      \*

MR. GILL: But what happened next, ladies and gentlemen? *This whole thing keeps escalating.* It just keeps getting more and more serious.

The defendant can't get out of this now, not with all of the people who know him here.

Now he's going to act with a higher level of culpability. How do we know he does this? *How do we know what's in his mind? Consider his conduct.* What's the first thing he's going to do? During the five or ten minutes it takes the group to get up to the Grand Concourse, he's going to change his appearance, he's going to put on a different shirt and put on a hat.

\*      \*      \*      \*      \*      \*

*When he takes aim to the crowd,* he's not taking aim to the right or the left. *He's firing right at them. He's using the hollow point bullets.* You were told HP bullets will do more damage.

*His objective right now is to kill somebody in the group. Whether it be Bullet [one of the boys with Correa] or the guy who screams at them. He's going to kill one of the guys in the group to get their respect.* He doesn't fire one shot, not two shots, three shots.

And ladies and gentlemen, consider this. You want to kill somebody, where are you going to shoot them; in the head or in the chest? A head shot from across the Grand Concourse, that's a little tough. He's aiming chest level and he nearly hits Flacca [Correa] dead on, right in the heart an inch before the heart.

\*      \*      \*      \*      \*      \*

MR. GILL: Ladies and gentlemen, please *listen carefully when the Judge instructs you on what is called transferred intent.* Listen carefully to that point, and I think you'll see *the evidence shows that the defendant's intent is legally sufficient with regard to the charge of the attempted murder, because with intent to kill something [sic; someone] he attempted to cause the death of Flacca [Correa].*

(A163–71, emphasis added.)

### The Trial Court's Charge to the Jury

Without objection, the trial court charged the jury as follows as to the attempted murder count:

Now, Attempted Murder in the Second Degree is charged in count one of the indictment. These counts, one, two, three and four, all relate to the second incident.

The charge reads as follow[s]: The defendant, on or about August 2nd, 1990, in the county of the Bronx, with the intent to cause the death of a person, did attempt to cause the death of Yanira Correa, by shooting her in the chest with a loaded pistol.

The law defines the crime of Murder in the Second Degree as follows: A person is guilty of Murder in the Second Degree when, with intent to cause the death of another person, he causes the death of such person or of a third person.

The law defines an attempt as follows: A person is guilty of an attempt to commit a crime when, with the intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.

Now remember, that there are two parts. There is the action, which is the attempt, and I will explain that to you, and there is the thought process which is the intent. So you have attempt and intent.

There are *three elements* which must be proven beyond a reasonable doubt. That on or about August 2nd, 1990, in the county of the Bronx, the defendant attempted to cause the death of Yanira Correa or another person in the group at 164th Street and the Grand Concourse, by shooting at him or her with a loaded pistol.

The conduct required for an attempt must be conduct that tends to effect the commission of the crime.

What is required is conduct that is directed toward the accomplishment of the crime, in this case, the crime of Murder in the Second Degree.

It is a substantial step toward the commission of that crime, although that crime never actually occurs. Such conduct need not be the last act necessary to commit the crime, but it must be more than preparation or planning.

So now you must have the act, which constitutes the attempt. That is an act which tends to effect the commission of the crime.

*Element number two: That the defendant intended that the conduct caused the death of Yanira Correa or some other person in that group.* An intent means that it is a person's conscious aim or objective, the purpose of the conduct is with that intent, that is he intends to cause the death. That must be the conscious aim or goal or purpose of the conduct.

*You obviously cannot be inside of a person's head to know what that person is*

*thinking. So, the law allows you to use all of the evidence to make a decision as to what that intent was,* and that element must be proven beyond a reasonable doubt, like all of the others.

And *element number three:* That *the defendant fired a loaded weapon and that he shot Yanira Correa in the chest.* That is the third element.

If you find each of those elements proven beyond a reasonable doubt you may find the defendant to be guilty.

If any of them is not proven beyond a reasonable doubt, you must find the defendant to be not guilty.

(A174–77, emphasis added.)

During deliberations, the jury asked to be re-instructed on the attempted murder count, and the trial judge reiterated his earlier instruction. (A178–83.) The jury sent a second note seeking clarification of the second and third elements of the attempted murder charge, and the court again reiterated his prior instruction to them. (A188–91.)

The jury found Fernandez guilty of attempted murder in the second degree, reckless endangerment (as to the first incident), and weapons possession. (A192–93.) Fernandez was sentenced to concurrent sentences, with the longest being six to twelve years for attempted murder. (*See* Petition ¶¶ 3–4.)

### State Court Appeals

The First Department affirmed Fernandez's conviction, finding "no merit to [his] argument that the crime of attempted murder in the second degree under a theory of transferred intent ... is a nonexistent crime." *People v. Fernandez,* 215 A.D.2d 234, 234, 626 N.Y.S.2d 190, 191 (1st Dep't 1995). The First Department also found the evidence sufficient to establish the intent element of that crime:

Viewing the evidence in a light most favorable to the prosecution ..., the evidence was legally sufficient to establish that defendant attempted to kill one of the persons in the victim's group. After defendant was rebuffed by the victim, he fired three shots in the air, evidencing his

anger. Thereafter, one of the victim's friends goaded defendant by asking him why he did not shoot them. Moments later, defendant left the scene, changed his clothing, used a cab to locate and intercept the victim and her friends, and fired three shots at them, one of which struck the victim in the chest. Defendant was then observed moments later discarding a gun in a nearby garbage pail. This testimony was more than enough to show that defendant deliberately sought out the victim and her friends with the intention of killing one of them.

*People v. Fernandez*, 215 A.D.2d at 235, 626 N.Y.S.2d at 191.

The New York Court of Appeals granted leave to appeal, and also affirmed Fernandez's conviction, but on a somewhat different basis. *People v. Fernandez*, 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910 (1996). The Court of Appeals found that because the actual victim's identity is irrelevant if an intent to kill someone is shown, the "transferred intent" doctrine was neither applicable to the crime of attempted second degree murder nor was it charged by Fernandez's trial judge:

Defendant was convicted of an attempt to commit the substantive crime of second degree murder. A person is guilty of that crime when, "[w]ith intent to cause the death of another person, he causes the death of such person *or of a third person*" (Penal Law § 125.25[1] [emphasis supplied]). Under this provision of the Penal Law, *where the resulting death is of a third person who was not the defendant's intended victim, the defendant may nonetheless be held to the same level of criminal liability as if the intended victim were killed. In other words, the identity of the victim is irrelevant if the requisite intent to kill is established and death of a person results.* In such cases, the defendant's intent to kill the intended victim is said to be "transferred" to the actual victim to establish all of the elements of the completed crime of intentional murder.

The doctrine of "transferred intent" serves to ensure that a person will be prosecuted for the crime he or she intend-ed to commit even when, because of bad aim or some other "lucky mistake," the intended target was not the actual victim. The doctrine is rooted in the belief that "such a defendant is no less culpable than a murderer whose aim is good" and thus should be punished to the same extent. One court has noted that "[t]he underlying rationale for the doctrine also suggests that transferred intent should apply only when, without the doctrine, the defendant could not be convicted of the crime at issue because the mental and physical elements do not concur as to either the intended or the actual victim." The doctrine thus sets up a fiction that should not be employed to "multiply criminal liability, but to prevent a defendant who has committed all the elements of a crime (albeit not upon the same victim) from escaping responsibility for that crime."

\* \* \* \* \* \*

Of more direct analytical significance for this case is the fact that because an attempt charge always involves an uncompleted crime, the transferred intent doctrine is ordinarily not implicated. The crime of attempted second degree murder is committed when, with the intent to cause the death of another person, one engages in conduct which tends to effect commission of that crime (*see*, Penal Law §§ 110.00; 125.25[1]). Where those elements converge, an attempted murder has occurred, regardless of whether the defendant has killed or even injured his or her intended target. In other words, *the crime of attempted murder does not require actual physical injury to a victim at all.* Since the focus of the doctrine of transferred intent under Penal Law § 125.25(1) is the identity of the person whose death actually resulted, this doctrine has no relevance in an attempt case, where an actual death is not an element.

Here, the court instructed the jurors that defendant could be found guilty of attempted murder if they found, beyond a reasonable doubt, that defendant intended to cause the death of either "[Correa] or another person in the group" and committed acts tending to effect the commission

of that crime. *The jurors were not required by the terms of this instruction to rely on the doctrine of transferred intend to convict, nor should they have been, since there was no death of an unintended victim and thus no need to "transfer" defendant's intent. In other words, given that injury is not an element of the crime of attempted murder, there was no need to link defendant's intent to kill to the actual victim—Correa—and there is no reason to become sidetracked by the fact that there was an injured victim in this case.*

*People v. Fernandez*, 88 N.Y.2d at 781–83, 650 N.Y.S.2d at 628–29, 673 N.E.2d 910 (emphasis added & citations omitted). Finally, the Court of Appeals agreed with the First Department that "the evidence is legally sufficient to establish that defendant [Fernandez] acted with a murderous intent." *Id.* at 783, 650 N.Y.S.2d 625, 629, 673 N.E.2d 910.

### ANALYSIS

### I. THE EXHAUSTION REQUIREMENT

In opposing Fernandez's federal habeas petition, the Government argued that while Fernandez raised these issues in the state courts on direct appeal, he did so only as a matter of state, not federal, law, and thus the federal claim was not exhausted. (Gov't Br. at 7–10.) Fernandez's direct appeals briefs relied almost exclusively on state cases, but he also conclusorily alleged that his conviction violated the Fourteenth Amendment. (*E.g.,* Killian Aff. Ex. 3: Fernandez, N.Y. Ct.App. Br. at 24, 26; Killian Aff. Ex. 1: Fernandez 1st Dep't Br. at 24, 25.) Under Second Circuit decisional law, however, reference to the Fourteenth Amendment and/or insufficiency of the evidence is sufficient to satisfy the exhaustion requirement. *See, e.g., Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir.1992) ("Although we have indicated that 'we think it would be better practice for counsel when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases,' a minimal reference to the Fourteenth Amendment satisfies the exhaustion requirement."); *Gonza-*

*lez v. Sullivan*, 934 F.2d 419, 423 (2d Cir. 1991) (same); *Holland v. Scully*, 797 F.2d 57, 65 (2d Cir.1986) (where arguments in "brief should have called to mind fundamental due process principles," federal claim was sufficiently raised in state court as to be exhausted); *Hawkins v. West*, 706 F.2d 437, 438–39 (2d Cir.1983) (argument that evidence was not sufficient to prove guilt beyond a reasonable doubt fairly presented federal constitutional claims to state court for exhaustion purposes).

But even assuming arguendo that Fernandez had not exhausted his federal claims, this Court still can reach the merits. The Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law on April 24, 1996, allows the Court, in its discretion, to deny on the merits a habeas petition containing unexhausted claims. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Court need not here determine what standard to use to determine when to dismiss and when to consider the merits of an unexhausted claim. Suffice it to say that in this case, the Court finds it appropriate to reach the merits (or lack thereof) of Fernandez's claims. For a discussion of the appropriate standard for determining when to dismiss and when to decide the merits of a petition that contains unexhausted claims, *see, e.g., Benitez v. Senkowski*, 97 Civ. 7819, slip op at 5–9 & nn. 4–5 (S.D.N.Y. March 3, 1998) (Peck, M.J.) (and cases cited therein). For cases deciding unexhausted claims on the merits after the AEDPA, *see, e.g., Bernard v. Stinson*, 97 Civ. 1873, 1998 WL 40201 at *2 & n. 1 (S.D.N.Y. Jan.30, 1998); *Rivera v. Senkowski*, 95 Civ. 5296, 1997 WL 391122 at *3 & n. 3 (S.D.N.Y. July 11, 1997); *Chapman v. Vanzandt*, 96 Civ. 6940, 1997 WL 375668 at *2 (S.D.N.Y. July 8, 1997); *Ramos v. Costello*, 96 Civ. 3659, 1997 WL 231129 at *5 (S.D.N.Y. May 7, 1997); *Loving v. O'Keefe*, 960 F.Supp. 46, 48–49 (S.D.N.Y.1997); *Cowan v. Artuz*, 95 Civ. 9967, 1996 WL 631726 at *5 (S.D.N.Y. Oct.24, 1996.)[2]

---

**2.** The Government also sought to avoid the merits of Fernandez's claims through use of the

"concurrent sentence" doctrine. (Gov't Br. at 5–6.) Because the Court denies Fernandez's habe-

## II. THE TRIAL EVIDENCE WAS SUFFICIENT FOR THE JURY TO FIND THAT FERNANDEZ INTENDED TO KILL SOMEONE

The Court first addresses whether there was sufficient evidence to support a jury verdict that Fernandez intended to kill someone; in the next section, the Court addresses the attempted murder and transferred intent issue.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (*quoting In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt ...." *Jackson v. Virginia,* 443 U.S. at 317, 99 S.Ct. at 2788. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2791–92; *accord, e.g., Robinson v. Warden of James A. Thomas Center,* 984 F.Supp. 801, 805 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.); *Ehinger v. Miller,* 942 F.Supp. 925, 935 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.); *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1996) (Jones, D.J. & Peck, M.J.).

Petitioner Fernandez bears a "very heavy burden":

[T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*United States v. Carson,* 702 F.2d 351, 361 (2d Cir.1983) (citations omitted), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). *Accord, e.g., United States v. Strauss,* 999 F.2d 692, 696 (2d Cir. 1993) (burden on defendant is " 'very heavy' " and all inferences must be drawn in the government's favor); *Robinson v. Warden,* 984 F.Supp. at 805–06; *Ehinger v. Miller,* 942 F.Supp. at 935; *Vera v. Hanslmaier,* 928 F.Supp. at 284.

"[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2789 (citations omitted); *accord, e.g., Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984); *Robinson v. Warden,* 984 F.Supp. at 806; *Ehinger v. Miller,* 942 F.Supp. at 935; *Vera v. Hanslmaier,* 928 F.Supp. at 284.

The "jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss,* 999 F.2d at 696 (*citing United States v. Roman,* 870 F.2d 65, 71 (2d Cir.), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989)); *accord, e.g., Robinson v. Warden,* 984 F.Supp. at 806; *Ehinger v. Miller,* 942 F.Supp. at 935; *Vera v. Hanslmaier,* 928 F.Supp. at 284. The role of this Court is clear: " '[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in

as petition on the merits, the Court need not consider the concurrent sentence doctrine.

favor of the prosecution.'" *Vera v. Hanslmaier*, 928 F.Supp. at 284 (quoting *Anderson v. Senkowski*, No. CV–92–1007 (CPS), 1992 WL 225576 at *3 (E.D.N.Y. Sept.3, 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993)); *accord, e.g., Robinson v. Warden*, 984 F.Supp. at 806; *Ehinger v. Miller*, 942 F.Supp. at 935; *see also, e.g., United States v. Birrell*, 447 F.2d 1168, 1173 (2d Cir.1971) (where inconsistency in testimony was minor and "all that was involved was faulty memory on a comparatively insignificant point," inconsistency was a jury question that does not create a "reasonable doubt as to defendant's guilt as a matter of law."), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 675, 30 L.Ed.2d 675 (1972); *Fagon v. Bara*, 717 F.Supp. 976, 979 (E.D.N.Y.1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony.").

With respect specifically to intent, Fernandez claims that there was insufficient proof that he intended to kill since he did not declare his intent to kill Correa or anyone else in her group, and the prosecution could not even identify the precise target of Fernandez's intent. (Fernandez Br. at 11.) However, the jury is permitted to "draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789; *accord, e.g., Mallette v. Scully*, 752 F.2d 26, 31 (2d Cir.1984); *Robinson v. Warden*, 984 F.Supp. at 806; *Ehinger v. Miller*, 942 F.Supp. at 935; *Vera v. Hanslmaier*, 928 F.Supp. at 284. Additionally, " '[i]ntent may be inferred from the defendant's conduct and the surrounding circumstances.'" *Vera v. Hanslmaier*, 928 F.Supp. at 284 (quoting *Anderson v. Senkowski*, 1992 WL 225576 at *4). As the Second Circuit has explained:

> What we review here is [petitioner's] intent immediately preceding the shooting of [the victim]. Specifically, whether there was sufficient proof to find beyond a reasonable doubt that [petitioner], with intent "to cause serious physical injury to another person," caused the death of such person or a third person. *See* N.Y. Penal Law § 125.20 (McKinney 1975). To show intent the government must prove what was in the mind of the accused. Commentators

agree that it is seldom possible to present testimonial or direct evidence of an accused's state of mind. Intent as a separate item of proof does not commonly exist. Thus, whenever intent is an element of a crime, its existence must be inferred by considering the laws that generally govern human conduct. Because intent is formed in the mind in secrecy and silence and the human mind functions at a speed impossible to measure, a determination of whether a deliberate intent was formed must be drawn from all the circumstances of the case. Circumstantial evidence of this subjective fact is therefore indispensable. Circumstantial evidence is as persuasive as direct evidence. With each, triers of fact must use their experience with people and events to weigh probabilities.

*Mallette v. Scully*, 752 F.2d at 32 (citations omitted); *see also, e.g., United States v. Kwong*, 14 F.3d 189, 194 (2d Cir.) ("By necessity, intent must usually be proven by circumstantial evidence."), *appeal after remand*, 69 F.3d 663 (2d Cir.), *cert. denied*, 517 U.S. 1115, 116 S.Ct. 1343, 134 L.Ed.2d 491 (1996); *Fratarcangelo v. Smith*, 792 F.2d 40, 43 (2d Cir.1986) ("intent may be inferred and need not be proved by the defendant's own statement, . . . which is a correct statement of the law"); *United States ex. rel. Bryant v. Washington*, 869 F.Supp. 601, 603 (N.D.Ill.1994) ("[S]pecific intent is an element of the state's burden in proving attempted murder. . . . The fact of specific intent to murder, however, can be inferred from '[t]he nature of defendant's acts and the surrounding circumstances.' ").

The Court agrees with the findings of the New York courts on direct appeal, that the circumstantial evidence was sufficient for a jury to properly conclude that Fernandez intended to kill someone in Correa's group:

> Viewing the evidence in a light most favorable to the prosecution . . ., the evidence was legally sufficient to establish that defendant attempted to kill one of the persons in the victim's group. After defendant was rebuffed by the victim, he fired three shots in the air, evidencing his anger. Thereafter, one of the victim's friends goaded defendant by asking him

why he did not shoot them. Moments later, defendant left the scene, changed his clothing, used a cab to locate and intercept the victim and her friends, and fired three shots at them, one of which struck the victim in the chest. Defendant was then observed moments later discarding a gun in a nearby garbage pail. This testimony was more than enough to show that defendant deliberately sought out the victim and her friends with the intention of killing one of them.

*People v. Fernandez,* 215 A.D.2d at 235, 626 N.Y.S.2d at 191, *aff'd,* 88 N.Y.2d at 780, 783, 650 N.Y.S.2d at 627, 629, 673 N.E.2d 910.

Finally, the Court notes that the Antiterrorism and Effective Death Penalty Act ("AEDPA") appears to have further limited this Court's role in determining sufficiency of the evidence habeas petitions. The AEDPA amended 28 U.S.C. § 2254(d) to provide that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court certainly cannot say that decisions of the First Department and N.Y. Court of Appeals here on Fernandez's direct appeal that the evidence of intent to kill was sufficient was contrary to established federal law or was based on an unreasonable determination of the facts. *See, e.g., Mobley v. Stinson,* 94 Civ. 5911, 1997 WL 80587 at *2 (S.D.N.Y. Feb. 26, 1997) ("[T]oday and pursuant to the [AEDPA], federal courts must give 'deferential review to state court decisions on sufficiency of the evidence claims.' That is, a habeas petition may be granted for evidence insufficiency only where the state courts have un-

reasonably applied the standard set forth in *Jackson.*") (citation omitted); *see also, e.g., Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.) ("Because *Jackson* claims are mixed questions of law and fact, we are compelled to hold that a writ of habeas corpus may be issued for evidence insufficiency only if the state courts have unreasonably applied the *Jackson* standard. Federal review of these claims therefore now turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test."), *vacated & remanded on other grounds,* — U.S. ——, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997); *Smith v. Vaughn,* No. Civ. A. 96–8482, 1997 WL 338851 at *7 (E.D.Pa. June 17, 1997) (same); *but cf. Jones v. Wood,* 114 F.3d 1002, 1013 (9th Cir.1997) ("[T]he district court's duty to ascertain the sufficiency of the evidence by engaging in a thorough review of the complete state court record is unaffected by the AEDPA. Without such a review of the record, it is impossible to determine whether the state court adjudication rested on an 'unreasonable application' of clearly established federal law or an 'unreasonable determination' of fact.").

III. **THE INTERPRETATION OF NEW YORK'S CRIME OF ATTEMPTED SECOND DEGREE MURDER IS FOR NEW YORK'S COURTS AND DOES NOT IMPLICATE ANY FEDERAL RIGHTS HERE**

The Supreme Court has long held that the state court's construction of state statutes "is 'a ruling on a question of state law that is as binding on [federal courts] as though the precise words had been written into' the statute." *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962) (quoting *Terminiello v. City of Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949)); *Johnson v. Fankell,* 520 U.S. 911, ——, 117 S.Ct. 1800, 1804, 138 L.Ed.2d 108 (1997) ("[T]he interpretation of the [state] statute by the [state's highest court] would be binding on federal courts. Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the state."); *Schad v.*

*Arizona,* 501 U.S. 624, 636, 111 S.Ct. 2491, 2499, 115 L.Ed.2d 555 (1991) (in cases that involve state criminal statutes, federal courts "are not free to substitute [their] own interpretations of state statutes for those of a State's courts."); *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926) ("Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the courts of the state.... The due process of law clause in the Fourteenth Amendment does not ... enable [federal] court[s] to revise the decisions of the state courts on questions of state law. What it does require is that state action ... shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions ..."). Accordingly, federal courts are limited to deciding whether a state's criminal statute, as construed by the State's courts, violates the Constitution. *Schad v. Arizona,* 501 U.S. at 636, 111 S.Ct. at 2499–500 (issue was not whether state courts misinterpreted state criminal law but whether state law as construed by highest state court was constitutional). This proposition also applies to habeas cases:

> We have stated many times that "federal habeas corpus relief does not lie for errors or state law." Today, we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (citations omitted); *see also, e.g., Jackson v. Virginia,* 443 U.S. 307, 324 n. 16, 99 S.Ct. 2781, 2792 n. 16, 61 L.Ed.2d 560 (1979) (insufficiency of evidence standard "must be applied with specific reference to the substantive elements of the criminal offense as defined by state law."); AEDPA, 28 U.S.C. § 2254(d) (an application for a writ of habeas corpus will not be granted unless the state's adjudi-cation of the claim resulted in a decision contrary to, or involved an unreasonable interpretation of, clearly established federal law).

Fernandez does not explain how New York's interpretation of its attempted murder statute or its application to the facts of his case violate the Fourteenth Amendment or any other federal Constitutional provision. Under New York law, second degree murder occurs where "with intent to cause the death of another person, [the defendant] causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1). The crime of attempted second degree murder is committed when, with the intent to cause the death of another person, one engages in conduct which tends to effect commission of that crime, and does not require actual physical injury to any victim. N.Y. Penal Law §§ 110.00, 125.25(1); *People v. Fernandez,* 88 N.Y.2d at 783, 650 N.Y.S.2d at 629, 673 N.E.2d 910. In other words, under New York law, when Fernandez with intent to kill shot at Correa or another person in her group, Fernandez committed the crime of attempted second degree murder, regardless of whether Correa (or anyone else) was hit by a shot. Indeed, Fernandez concedes that if Colonel Sebastian Moran shoots with intent to kill Sherlock Holmes and hits Dr. Watson, that is attempted murder of Holmes; Fernandez claims, however, that that conduct cannot be the attempted murder of Watson. (Killian Aff. Ex. 1: Fernandez 1st Dep't Br. at 28–29; Killian Aff. Ex. 3: Fernandez N.Y. Ct.App. Br. at 35.) That semantics argument demonstrates that there is no Constitutional infirmity with Fernandez's conviction here (and any statutory infirmity is an issue of state not federal law).[3] Moreover, Fernandez's habeas petition is based on the erroneous assumption that he was convicted of transferred intent attempted murder. The New York Court of Appeals, however, held that Fernandez was not convicted of transferred intent attempted murder. *See People v. Fernandez,* 88 N.Y.2d at 783, 650 N.Y.S.2d

---

3. If the State were to charge multiple crimes for the same act—*e.g.,* attempted murder of Holmes and attempted murder of Watson in the above example—in order to impose consecutive sentences, that might create a constitutional problem at some point. That, however, is not the fact pattern before the Court.

at 629, 673 N.E.2d 910. Fernandez does not argue that attempted murder, without transferred intent, as defined by the New York Court of Appeals, is unconstitutional (nor could he successfully make such a claim).

Finally, even if Fernandez had been convicted of the crime of transferred intent attempted murder—which the New York Court of Appeals found he was not—Fernandez does not explain why that would be Constitutionally (as opposed to statutorily) infirm. In determining whether a state criminal statute goes beyond Constitutional limits, the Supreme Court has "often found it useful to refer both to the history and to the current practice of other States in determining whether a State has exceeded its discretion in defining offenses." *Schad v. Arizona*, 501 U.S. at 640, 111 S.Ct. at 2501. It is significant, therefore, that the United States and states besides New York have adopted the crime of transferred intent attempted murder. *See, e.g., Al–Qaadir v. Gallegos*, 56 F.3d 70, 1995 WL 330628 at *3–4 (9th Cir. June 2, 1995) (any error in instructions re transferred intent was constitutionally harmless error); *United States v. Willis*, 46 M.J. 258, 259 (U.S. Armed Forces 1997) (upholds plea of guilty to attempted murder under either a transferred intent or concurrent intent theory), *aff'g*, 43 M.J. 889, 895–96 (A.F.C.C.A.1996) (citing cases) ("The preceding citations suggest non-empirically the majority view favors applicability of transferred intent in attempted murder cases."); *Blanche v. Indiana*, 690 N.E.2d 709, 712 (Ind.1998) (transferred intent doctrine "also applies to the intent necessary for attempted murder"); *People v. Hill*, 276 Ill.App.3d 683, 213 Ill.Dec. 273, 658 N.E.2d 1294, 1297 (1995) ("the doctrine of transferred intent is applicable in attempted murder cases"); *Brooks v. United States*, 655 A.2d 844, 849 (D.C.1995) (upholding multiple transferred intent assault convictions); *State v. Rodriguez–Gonzales*, 164 Ariz. 1, 790 P.2d 287, 288–89 (1990) (upholds Ariz. application of transferred intent to attempted murder and notes that transferred intent doctrine extends back to English common law); *State v. Gillette*, 102 N.M. 695, 699 P.2d 626, 634–36 (1985) (upholds transferred intent attempted murder conviction). (*See also* Killian Aff. Ex. 3:

Fernandez N.Y. Ct.App. Br. at 40–41 nn. 5–6; Killian Aff. Ex. 4: Gov't N.Y. Ct.App. Br. at 32–35.)

Fernandez has presented no argument as to why, even assuming *arguendo* that he had been convicted of transferred intent attempted murder, such a conviction would violate Constitutional due process, and in light of the federal and state laws of transferred intent attempted murder, the Court fails to see any Constitutional issue raised by Fernandez's conviction.

### *CONCLUSION*

For the reasons set forth above, I recommend that the Court deny Fernandez's habeas corpus petition.

April 3, 1998.